AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| TOMAS CARDONA, ISRAEL CARDONA, and CARLOS JOSE MARCELO | ) ) ) ) | Case No. 12-8159-DLB |
| *Defendant(s)* | ) | |

FILED by _____ D.C.
APR 2 0 2012
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 14-19, 2012__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| United States Code 21, Sections 841(a)(1) and 846 | Conspiracy to possess with intent to distribute over 500 grams of cocaine and possession with intent to distribute over 500 grams of cocaine. |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ian Lance MacVane, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4-20-12

_____
*Judge's signature*

City and state: West Palm Beach, FL

Dave Lee Brannon, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT
# SPECIAL AGENT
# IAN LANCE MACVANE
# DRUG ENFORCEMENT ADMINISTRATION

I, Ian Lancer MacVane, a Special Agent with the United States Drug Enforcement Administration (DEA), United States Department of Justice, having been duly sworn, depose and state:

1. I am assigned to the DEA Fort Lauderdale, Florida District Office. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a Special Agent with DEA, assigned to the Miami Field Division, since August 2009. Prior to becoming a DEA Special Agent, I was a Task Force Officer (TFO) with DEA West Palm Beach Resident Office (WPBRO) from June 2005 to March 2009. I was also employed as a Police Officer for the City of West Palm Beach Police Department (WPBPD) since January of 1997. Prior to my assignment to the DEA, I was assigned to the Special Investigations Division (SID) of the WPBPD for a period of approximately five years for the purpose of investigating narcotic and dangerous drug related complaints. I was also a member of the WPBPD SWAT team for approximately 9 years prior to March 2009. The WPBPD SWAT team conducted drug related search warrants on a monthly basis. During my law enforcement experience, I have investigated cases involving controlled substances since 2000. I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executions of search warrants, and reviews and analyses of taped conversations and records of drug traffickers. Through my training, education, and experience, which has included debriefing

1

cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, investigation, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking, I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement, as well as methods used to finance drug transactions and launder drug proceeds. I am also aware that drug traffickers often speak in guarded or coded language when discussing their illegal business in an effort to further prevent detection. Among other duties, I am now responsible for the instant investigation.

2. The purpose of this affidavit is to establish that there is probable cause to believe that Carlos Jose MARCELO, a/k/a "Gordo," Tomas CARDONA, and Israel CARDONA did knowingly and intentionally combine, conspire, and agree to possess with the intent to distribute a controlled substance, and did possess with intent to distribute a controlled substance, that is, five hundred grams or more of cocaine, in violation of Title 21, United States Code Sections 841(a)(1) and (b)(1)(B) and 846.

3. This affidavit is based upon an ongoing drug investigation, conversations with other law enforcement officers, information obtained through the use of subpoenas, surveillance training and experience, and the events and circumstances set forth below.

4. On April 12, 2012, United States District Court Judge Donald M. Middlebrooks signed an order authorizing the interception of wire communications on the cellular telephone being utilized by Carlos Jose MARCELO a/k/a "Gordo." The interceptions on this wiretap began on April 12, 2012, and ended April 20, 2012.

5. As agents monitored MARCELO's conversations, they overheard drug related conversations between MARCELO and Israel CARDONA. Based on the totality of the investigation to date and on the agents' training and experience, agents believe that

MARCELO utilizes a number of cocaine sources of supply, including Tomas and Israel CARDONA, as described more fully below. MARCELO then distributes the cocaine he receives to other cocaine dealers throughout South Florida.

6. On April 14, 2012, at approximately 1903 hours, MARCELO, utilizing 561-436-9810, received an incoming telephone call from 305-522-8457, which is subscribed to by "Francisco CRUZ" and utilized by Tomas CARDONA a/k/a "El Gordo." MARCELO asked, "How are things, very little? Because it's already...are the things handed out already?" Tomas CARDONA answered, "Uh-huh. Listen, no, no, there's going to be some, this coming week." MARCELO said, "Damn, there's nothing this week then?" Tomas CARDONA said, "No, I don't think so because I called and they are still up there, that takes some time..." MARCELO interrupted and said "Damn!" Tomas CARDONA continued, "...but let me see if they resolve something for me somewhere down here, I will let you know. Did you hear me?" MARCELO said, "They are driving me crazy. I'm going to turn off the telephone. I won't continue." Tomas CARDONA later said he (Tomas CARDONA) would call if "there's any change..." MARCELO affirmed. MARCELO then mentioned that he (MARCELO) had attempted to call him (Tomas CARDONA) from another telephone earlier. Tomas CARDONA affirmed. The call ended.

7. Based on the totality of the investigation to date and on their training and experience, Agents believe MARCELO asked if the cocaine had already been distributed. Tomas CARDONA said the cocaine had already been distributed but there was an impending cocaine shipment due for arrival the following week, beginning approximately April 22, 2012. Tomas CARDONA said the cocaine was still "up there" meaning somewhere north of South Florida. Tomas CARDONA said in the meantime he (Tomas CARDONA) would see if "they," Tomas CARDONA's cocaine source of supply, could provide him (Tomas

3

CARDONA) with cocaine "down here," meaning South Florida, for MARCELO. MARCELO complained that his (MARCELO's) cocaine buyers were driving him (MARCELO) crazy with calls for cocaine that he (MARCELO) did not have. Tomas CARDONA said he (Tomas CARDONA) would let MARCELO know if there was any change on the arrival date of the cocaine shipment.

8. On April 15, 2012, at approximately 1805 hours, MARCELO, utilizing 561-436-9810, received an incoming telephone call from 305-608-4986, subscribed to "Locus Communications" and utilized by an unidentified male, herein referred to as "UM1." UM1 and MARCELO discussed business ventures and had a social conversation. UM1 then asked if "the guy" had said if there was any hope for anything. MARCELO said he (MARCELO) was unsure and as soon as "something happened" he (MARCELO) would call UM1. UM1 asked if MARCELO had spoken to "El Gordo" today. MARCELO replied yesterday. UM1 indicated that he (UM1) had also called him (Tomas CARDONA) "a little while ago" but that he (Tomas CARDONA) had not answered his (UM1's) call. MARCELO said he (Tomas CARDONA) "did not have anything now." UM1 affirmed and said if he (Tomas CARDONA) did have something, he (Tomas CARDONA) would have called him (UM1) back. UM1 asked MARCELO to call him (UM1) if "anything." The call later ended. Agents believe MARCELO and UM1 were discussing the fact that Tomas CARDONA a/k/a "El Gordo" did not have any cocaine to distribute.

9. On April 19, 2012, at approximately 1218 hours, MARCELO, utilizing 561-436-9810, received an incoming telephone call from 305-797-2199, subscribed to Raul Alonso and utilized by Israel CARDONA. Israel CARDONA asked if MARCELO had been "lost." MARCELO asked if Israel CARDONA had been "lost?" Israel CARDONA later asked what time MARCELO would "arrive." MARCELO replied, "4:00." Israel CARDONA asked

4

MARCELO to call him (Israel CARDONA). MARCELO affirmed. Israel CARDONA said, "The aunt already…" MARCELO interrupted, "I, I called you from another phone that I got…didn't you see it?" Israel CARDONA negated. MARCELO said he had tried to call Israel CARDONA "2-3 times" and Israel CARDONA didn't answer. Israel CARDONA said, "Call me on this phone because the aunt sent, the aunt sent a, a package for you there. Call me later on from your phone, man, from the company." MARCELO affirmed. Israel CARDONA said, "You heard, call me as soon as you get a chance." MARCELO affirmed. The call ended.

10. Based on the totality of the investigation to date and on their training and experience, agents believe that Israel CARDONA is associated with Tomas CARDONA. During the call, Israel CARDONA informed MARCELO that "aunt," meaning the CARDONA drug trafficking organization (DTO), had sent a "package" or cocaine shipment for MARCELO. Israel CARDONA told MARCELO to call him (Israel CARDONA) from MARCELO's trucking company telephone. Israel CARDONA reaffirmed for MARCELO to call him back.

11. On April 19, 2012, at approximately 1229 hours, MARCELO, utilizing 561-436-9810, placed an outgoing telephone call to 561-340-9592, unknown subscriber and utilized by one of MARCELO's cocaine buyers, an unidentified male, herein referred to as "UM3." UM3 said he would call MARCELO back. MARCELO replied, "No, it was just to tell you that it's possibly for tomorrow. For sure tomorrow, possibly today, but for sure tomorrow. That was it." UM3 affirmed. The call ended. Agents believe that MARCELO was informing UM3, one of his (MARCELO's) cocaine customers, that the cocaine shipment was due to arrive on April 20, 2012 or this date (April 19, 2012).

12. On April 19, 2012, at approximately 1230 hours, MARCELO, utilizing 561-436-9810, placed an outgoing telephone call to 305-608-4986, subscribed to "Locus

5

Communications" and utilized by UM1. MARCELO said, "Bro, finally, how many is it going to be?" UM1 answered, "Bro, I don't know. When…when…when you tell me, I'll call and ask but it's going to be, a minimum of 12 I believe." MARCELO later said it was a "sure thing for tomorrow." UM1 said he would call "to see how many…" MARCELO said, "Because the other one called me now, the other…the…not the owner, not the boss, the, the subordinate and he, he told me, 'Hey, what time do you come back? Call me as soon as you return.' So maybe now, you understand?" The call later ended. Agents believe UM1 said he (UM1) wanted to take 12 kilograms of cocaine from MARCELO once the cocaine shipment arrived. MARCELO said the cocaine shipment would arrive tomorrow (April 20, 2012) at the latest. UM1 said he would check with his (UM1's) cocaine buyers to see how many cocaine kilograms were needed. MARCELO said he had already received a call from "the subordinate," meaning Israel CARDONA from the CARDONA DTO, to call him (Israel CARDONA) back.

13. On April 19, 2012, at approximately 1238 hours, MARCELO, utilizing 561-436-9810, received an incoming telephone call from 305-608-4986, subscribed to "Locus Communications" and utilized by UM1. UM1 said, "Listen, uh…well, up 'till now I have nine confirmed but…" MARCELO interrupted and affirmed. UM1 continued, "…but I know that, that, that the one from the cars is also going to come." MARCELO affirmed. The call ended. Agents believe that UM1 told MARCELO that he (UM1) would take nine kilograms of cocaine from MARCELO once the cocaine shipment arrived. UM1 mentioned that "one from the cars" would also arrive. This is possibly a code word for another type of illicit drug that will be with the cocaine shipment.

14. On April 19, 2012, at approximately 1739 hours, MARCELO, utilizing 561-436-9810, received an incoming telephone call from 305-797-2199, subscribed to Raul Alonso and

6

utilized by Israel CARDONA. Israel CARDONA said, "Uh…listen, come here to my father in law's house in a little while to drink some beers." MARCELO affirmed. Israel CARDONA continued to say that he was waiting to drink a beer with MARCELO. MARCELO said to give him (MARCELO) approximately 20 minutes. Israel CARDONA affirmed. The call ended. Agents believe that Israel CARDONA wanted to meet with MARCELO at the father in law's house (704 Mercury Street, West Palm Beach). Agents believe drinking a "beer" was code for distributing cocaine kilograms to MARCELO.

15. On April 19, 2012, at approximately 1814 hours, MARCELO, utilizing 561-436-9810, received an incoming telephone call from Isreal CARDONA. Israel CARDONA asked where MARCELO was and MARCELO said he was at the "corner of Don Ramon's." Israel CARDONA said, "Okay, alright, get in reverse and…so you can drink a beer here." MARCELO affirmed. Israel CARDONA said, "Pull it real close to the garage" at the father in law's residence. MARCELO affirmed. The call ended. Agents believe Israel CARDONA told MARCELO to pull real close to the garage at the father in law's residence in order to obtain cocaine kilograms from the residence.

16. On April 19, 2012, at approximately 1823 hours, MARCELO, utilizing 561-436-9810, placed an outgoing telephone call to 305-608-4986, subscribed to "Locus Communications" and utilized by UM1. During this call, voices could be heard talking in the background indicating MARCELO was in the company of other individuals. MARCELO said aside to unknown individuals, "I'm going to Miami." MARCELO said he (Marcelo) had "good and bad ones." MARCELO later asked if UM1 was ready for him (MARCELO) to go down there. UM1 affirmed. MARCELO said, "Alright but there are only six. That's the only thing I can do. UM1 affirmed and later said, "…because I don't have all that here." MARCELO said, "I will be leaving here at 7:00 for sure, so I will be there past eight." UM1

7

affirmed. The call ended. Agents believe that MARCELO was telling UM1 that he had obtained six kilograms of cocaine. UM1 said he did not have the payment yet. MARCELO said he would leave at 7:00 PM and take the cocaine to UM1 in Miami, arriving at approximately 8:00 PM. At approximately the same time a surveillance Agent saw MARCELO's red Mercury Marquis parked, backed in at 704 Mercury St., West Palm Beach, Florida. At approximately 1832 hours, surveillance Agents saw the red Mercury driven my MARCELO leave 704 Mercury St.

17.   On April 19, 2012, at approximately 1835 hours, MARCELO, utilizing 561-436-9810, placed an outgoing telephone call to 305-608-4986, subscribed to "Locus Communications" and utilized by UM1. UM1 asked MARCELO to wait at his (UM1) location until his (UM1's) cocaine buyer could arrive with the payment. MARCELO replied that he (MARCELO) had to work in the morning and would rather "finish today and that's it." UM1 then asked MARCELO to "leave it here..." MARCELO affirmed. The call later ended. Agents believe MARCELO told UM1 that he would deliver the cocaine kilograms to UM1 tonight (April 19, 2012) and agreed to leave the cocaine with UM1 until UM1 could render payment at a later time.

18.   On April 19, 2012, at approximately 1838 hours, a surveillance agent saw MARCELO back the red Mercury up the driveway to his residence located at 1026 Dogwood Rd., West Palm Beach, Florida. Agents saw MARCELO exit the red Mercury then lost sight of him (MARCELO). Approximately an hour later, agents saw the red Mercury driven by MARCELO leave the residence. Agents performed a traffic stop on the red Mercury. Agents took MARCELO into custody. Search incident to arrest, agents saw an open box on the front passenger seat. The open box contained a white plastic bag. Agents opened the white plastic bag and found cocaine. Agents also located a gym bag behind the driver's seat. This bag

8

contained an additional amount of cocaine. Agents seized a total of approximately 7 kilograms of cocaine from the red Mercury.

19. Agents secured the residence at 704 Mercury Street, West Palm Beach, Florida 33409. Israel CARDONA was one of the occupants inside the house. Agents had all of the occupants of this house exit the residence. Agents secured the scene. Another agent called the cell phone number 305-797-2199. Israel CARDONA's cell phone rang.

20. Agents interviewed MARCELO. Post-Miranda, MARCELO admitted that his wife was at the residence (1026 Dogwood Road) and that there was additional cocaine inside this residence. Agents secured the residence at 1026 Dogwood Road in anticipation of receiving a search warrant. Agents obtained a search warrant for 1026 Dogwood Rd. and located approximately two kilograms of cocaine inside the residence.

Based upon the aforementioned, I respectfully submit that probable cause exists to believe that Carlos Jose MARCELO, a/k/a "Gordo," Tomas CARDONA, and Israel CARDONA have committed the offenses of conspiracy to possess with intent to distribute, and possession with intent to distribute, a controlled substance, that is five hundred grams or more of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 846.

_____
Ian Lance MacVane
Special Agent
Drug Enforcement Administration


Sworn and subscribed to before me on this ___20th___ day of April, 2012.

_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 12-8159-DLB

### BOND RECOMMENDATION

DEFENDANT: TOMAS CARDONA

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Rinku Tribuiani

Last Known Address: 4255 Garand Lane

West Palm Beach, FL 33406

What Facility:

Agent(s):   Special Agent Ian Lance MacVane
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
Drug Enforcement Administration

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 12-8159-DLB

## BOND RECOMMENDATION

DEFENDANT: ISRAEL CARDONA

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Rinku Tribuiani

Last Known Address: 913 Francis Street

West Palm Beach, FL 33405

What Facility: _____

Agent(s): Special Agent Ian Lance MacVane
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
Drug Enforcement Administration

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 12-8159-DLB

### BOND RECOMMENDATION

DEFENDANT: CARLOS JOSE MARCELO

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Rinku Tribuiani

Last Known Address: 386 Colonial Road

West Palm Beach, FL 33405

What Facility:

Agent(s):   Special Agent Ian Lance MacVane
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
Drug Enforcement Administration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. __12-8159-DLB__

UNITED STATES OF AMERICA

v.

TOMAS CARDONA, ISRAEL CARDONA,
and CARLOS JOSE MARCELO

Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
RINKU TRIBUIANI
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0150990
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401-6235
Tel: (561) 820-8711
Fax: (561) 820-8777
Rinku.Tribuiani@usdoj.gov